IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LORI SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-03069 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| BOARD OF EDUCATION FOR | ) | |
| WAUKEGAN PUBLIC SCHOOL DISTRICT | ) | |
| # 60, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lori Smith is the former Director of Diverse Learners at Waukegan Public School District #60 ("District"). She contends that she suffered discrimination and was ultimately fired because of her race and sex and in retaliation for blowing the whistle on violations of students' rights. In her ten-count Complaint, she names four Defendants: the District, the District's Board of Education ("Board"), superintendent Theresa Plascencia, and deputy superintendent Eduardo Cesario (collectively, "Defendants"). Before the Court are Defendants' motions for partial dismissal of Smith's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 16, 20.) For the reasons stated below, the Court grants Defendants' motions in part and denies them in part.

**BACKGROUND**

For the purposes of Defendants' motions to dismiss, the Court accepts as true the well-pleaded facts in the Complaint and views them in the light most favorable to Smith. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015). The Complaint alleges as follows.

After being hired by the Board, Smith began work as Director of Diverse Learners on September 10, 2018. (Second Am. Compl. ¶ 8, Dkt. No. 1.) Prior to April 12, 2019, Smith "criticized" and "chastised" other employees for what she believed to be violations of state and federal laws regarding students' rights, including special education rights. (*Id.* ¶ 11.) Both superintendent Plascencia and deputy superintendent Cesario knew that Smith had criticized and resisted the purportedly illegal practices. (*Id.* ¶ 12.)

Then, on April 12, 2019, Smith discussed various complaints, including what she describes as a "Title IX" complaint, with Tom Morris, general counsel for the Board and the District.[1] (*Id.* ¶ 14.) Subsequently, on April 23, 2019, Morris emailed Smith to summarize their conversation. (*Id.*, Ex. B, Morris Email, Dkt. No. 1.) According to Morris's summary, Smith reported that Cesario had become unsupportive and hostile toward her, yelling at her during a one-on-one meeting, which Smith believed to be the result of "the unfair accusations of others." (*Id.* at 2.) Specifically, Smith, who is white, described a "hostile atmosphere" in which African-American educators and community members accused her of racism and criticized her unfairly. (*Id.*) Smith further reported, as summarized by Morris, that the Board allowed and promoted those unjustified accusations even though Smith had no bias or discriminatory motive against African Americans or any other group. (*Id.*) After receiving Morris's email summary, Smith responded to him endorsing the general description of the conversation, with the caveat that some points needed clarification or additional detail. (*Id.* at 1.) Smith also wrote that she had spoken to an attorney she intended to retain and that she intended to file an "official complaint" (apparently,

---

[1] Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

pursuant to the Board's grievance processes). (*Id.*) Smith alleges that Morris "accepted" her

complaints "for investigation" under the Board's grievance policy. (Second Am. Compl. ¶ 15.)

Two days after the email exchange with Morris, Cesario informed Smith that she would be

terminated from her position as of July 19, 2019. (*Id.* ¶ 17.) Cesario stated that Smith was only

employed in an interim position, which Smith contested. (*Id.* ¶¶ 18–19.) Smith expressed her

belief that her termination constituted retaliation for her complaints to Morris, including her

correspondence with Morris two days prior and what she describes as a "Title VII" complaint.[2]

(*Id.* ¶ 20.)

Someone (Smith does not specify who) later informed Smith that she would be reclassified

as a teacher and her salary reduced from $125,000 to $79,000, even though she was qualified and

certified for other available administrative positions. (*Id.* ¶ 21.) Smith also participated in an

internal investigation regarding her complaints on June 19, 2019. (*Id.* ¶ 24.)

Sometime after she was terminated as Director of Diverse Learners, Smith was invited to

reapply for the position. (*Id.* ¶ 77.) She complained that a member of the hiring committee had a

conflict of interest due to an issue involving the member's son and the Department of Diverse

Learners. (*Id.* ¶ 78.) However, Defendants did not respond to this complaint or remove the

panelist from the hiring committee. (*Id.* ¶ 79.) Defendants did not rehire Smith; instead, they hired

a male candidate who was less experienced and less qualified than Smith because they wanted to

have a man in the position. (*Id.* ¶¶ 81–82.)

Smith initially filed suit in July 2019 in the Circuit Court of Lake County, asserting four

state-law counts for violation of the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*, breach of

contract, breach of implied contract, and declaratory judgment. (Defs.' Notice of Removal at 2,

---

[2] Title VII prohibits an employer from discriminating against an individual based on her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.

Dkt. No. 2.) The state court dismissed without prejudice Smith's claims under the Illinois

Whistleblower Act and for breach of implied contract. (Notice of Removal, Order on Defs.' Mot.

to Dismiss Pl.'s Verified Compl, 61, Dkt. No. 2-1.) Meanwhile, Smith also submitted a Charge of

Discrimination to the Equal Employment Opportunity Commission; the Commission issued to

Smith a Notice of Right to Sue based on her allegations of race and sex discrimination in violation

of Title VII of the Civil Rights Act of 1964 and her claims of retaliation. (Second Am. Compl.,

Ex. F, Right to Sue Notice, Dkt. No. 1.) After Smith filed a Second Amended Complaint in state

court adding claims under several federal statutes, Defendants removed the case to this Court

based on federal question jurisdiction.

Smith asserts ten claims in her Second Amended Complaint. Count I alleges that

Defendants violated the Illinois Whistleblower Act by retaliating against her after she complained

about actions that she believed to be illegal.[3] Count II alleges that Smith had an enforceable

employment contract for one year at a salary of $125,000 and Defendants breached the contract

by terminating her prior to the end of that year. Count III alleges that the Board and the District

breached an implied contract by violating certain Board policies prohibiting retaliation or

harassment. Count IV seeks a declaratory judgment under state law that Smith was entitled to a

4% raise for the 2019–20 fiscal school year. Smith further asserts that Defendants discriminated

against her because of her race and sex in violation of Title VII (Count V), the Illinois Civil

Rights Act (Count VI), Title IX (Count VII), 42 U.S.C. § 1981 (Count VIII), and 42 U.S.C.

§ 1983 (Count IX). Finally, Smith claims that she was discharged in retaliation for her complaints

---

[3] Smith asserts under Count I, in passing, that Defendants "also violated plaintiff['s] right to due process and equal protection under the Illinois Constitution," but she does not elaborate on these claims or raise them in separate counts. Thus, the Court treats this count as only asserting claims pursuant to the Illinois Whistleblower Act.

about illegal practices and race and sex discrimination (Count X). Smith asserts each count

against all Defendants, except for Count III, which names only the District and the Board.

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This

pleading standard does not necessarily require a complaint to contain detailed factual allegations.

*Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014)

(quoting *Iqbal*, 556 U.S. at 678).

### I.     Illinois Whistleblower Act (Count I)

Smith's alleges that she notified Defendants of various violations of students' rights under

federal and state law and that she complained about racial discrimination against her. (Second

Am. Compl. ¶¶ 31–32.) She claims that Defendants violated the Illinois Whistleblower Act by

terminating her in retaliation for those complaints. Defendants contend that Smith has not pleaded

sufficient facts to state a claim under that statute.

Although Smith's complaint invokes several clauses of the Illinois Whistleblower Act, she

relies on just one, 740 ILCS 174/15(b), in defending against Defendants' motion to dismiss. That

clause prevents an employer from retaliating against an employee for disclosing information to a

government agency so long as the employee "has reasonable cause to believe that the information

discloses a violation of a State or federal law, rule, or regulation." *Id.* To state a claim under this

clause, an employee must allege "(1) an adverse employment action by his or her employer, (2)

which was in retaliation (3) for the employee's disclosure to a government or law enforcement agency (4) of a suspected violation of an Illinois or federal law, rule, or regulation." *Sweeney v. City of Decatur*, 79 N.E.3d 184, 188 (Ill. App. Ct. 2017.)[4]

Smith has alleged that she suffered an adverse employment action—i.e., her firing—and that it was retaliatory. But the parties dispute whether the Board and the District are government agencies under the Whistleblower Act. Specifically, Defendants contend that an employee's employer cannot be a "government agency" under the Act because the Act requires disclosure to an outside agency, not simply to the government entity for which the employee works. At least one Illinois Appellate Court has held otherwise, explaining:

> It is not that a municipal employee like plaintiff could not have reported to [her] own governmental employer or that a municipal employee must report to an outside source; the statute requires an employee only to report to a government or law-enforcement agency, and no exceptions apply if a government or law-enforcement agency is also the employer. Had the legislature intended that the Act not apply to reports made to an employee's own government or law-enforcement agency employer, it certainly would have included such a limitation.

*Brame v. City of N. Chi.*, 955 N.E.2d 1269, 1272–73 (Ill. App. Ct. 2011). Applying *Brame*, recent decisions in this District have reached the same conclusion. *See Molloy v. Acero Charter Sch., Inc.*, No. 19 C 785, 2019 WL 5101503, at *7 (N.D. Ill. Oct. 10, 2019) (holding that internal reports of special education violations were sufficient to constitute disclosure to government agency under the Whistleblower Act); *Elue v. City of Chicago*, No. 16 CV 9564, 2018 WL 4679572, at *8 (N.D. Ill. Sept. 28, 2018) (rejecting proposition that "internal reports do not give rise to a whistleblower claim" under the Whistleblower Act).

Defendants note that some courts in this District have reached the opposite conclusion, but their cited authorities are not persuasive on this issue. For example, they cite *Zelman v. Hinsdale*

---

[4] Smith pleads that both the District and the Board were her employers. (Second Am. Compl. ¶ 29.)

*Township High School District 86*, 2010 WL 4684039, at *2 (N.D. Ill. Nov. 12, 2010), which

concluded that the Illinois legislature, by defining "employer" to include school districts, intended

to exclude school districts from the category of "governmental or law enforcement agenc[ies]"

that can receive whistleblower complaints. But the court in *Zelman* did not address the fact that

the Whistleblower Act also defines "employer" to include "political subdivision[s] of the State"

and "unit[s] of local government." 740 ILCS 174/5. The logic employed by the *Zelman* court

would therefore exclude police departments, inspector general offices, and other state and local

entities from the scope of "governmental or law enforcement agencies" as defined by the statute,

which cannot be correct because those are precisely the sort of agencies that regularly receive

whistleblower complaints. Defendants also cite *Sweeney*, but that case held only that "section

15(b) of the Whistleblower Act does not protect an employee who simply notes the impropriety

of conduct with the alleged wrongdoer, as that does not constitute the disclosure of information

under the Whistleblower Act." 79 N.E.3d at 190. *Sweeney* held only that "disclosure" to a

government agency requires more than a conversation with the alleged wrongdoer, not that

disclosure requires reporting to an outside entity.

This leaves the question of whether Smith has adequately pleaded facts sufficient to

support her Whistleblower Act claim. She alleges that "[o]n numerous occasions throughout the

2018–2019 school year, [she] notified the defendants of numerous illegal practices by other

named employees of the district." (Second Am. Compl. ¶ 31.) She also alleges that she identified

violations of various state and federal laws relating to the rights of students with disabilities. (*Id.*)

Further, Smith claims that she "complained to defendants about what she reasonably believed was

racial discrimination against her." (*Id.* ¶ 32.) These allegations, although sparse, suffice to state a

claim. They put Defendants on notice of the kinds of complaints she made—primarily,

complaints regarding violations of student rights under special education laws—and the time

frame in which she made them. Defendants contend that more detail is needed because they

cannot determine when Smith made the alleged complaints or the substance of those

complaints—that is, which employees she complained about and what she alleged that they did.

But Smith's claim rests on her allegation that she made complaints and suffered retaliation as a

result, not on the substance of those complaints. So it is unclear why more detail about her

complaints would be needed to provide fair notice of the grounds of her claim. Her complaint

"need only provide a short and plain statement of the claim showing that the pleader is entitled to

relief, sufficient to provide the defendant with fair notice of the claim and its basis," and it has

done so here. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotation

marks and citations omitted).[5]

Defendants also assert that Smith's Whistleblower Act claim is barred by the Illinois Tort

Immunity Act, 745 ILCS 10/1-101 *et seq.* The Tort Immunity Act protects a public entity from

liability only where the challenged "act or omission" is "both a determination of policy and an

exercise of discretion." *Harrison v. Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848,

852 (Ill. 2001). A "policy decision" is one that "require[s] the governmental entity or employee to

balance competing interests and to make a judgment call as to what solutions will best serve each

of those interests." *Id.* at 848. And because the Tort Immunity Act "was enacted in derogation of

the common law, it must be strictly construed." *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273,

279 (2003).

---

[5] Smith also contends that Defendants violated the Whistleblower Act by instructing her not to communicate directly with Board members. But because she has stated a claim via her other allegations, the Court does not reach the question of whether this allegation, standing alone, would suffice to state a claim.

Based on Smith's pleading, it is not apparent that Defendants' decision to fire her was a "policy decision." The pleadings do not suggest that Defendants conducted any balancing of competing interests. The Seventh Circuit has held that the "one-time decision to fire one employee . . . does not amount to a judgment call between competing interests" without evidence that competing interests actually entered into the government entity's decision. *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 679 (7th Cir. 2009) (internal quotation marks omitted). Defendants have not explained why the pleadings establish that Smith's firing was a policy choice pursuant to the Tort Immunity Act. And in any event, because immunity under the Act is an affirmative defense, Defendants "bear the burden of properly raising and proving their immunity." *Van Meter*, 799 N.E.2d at 280. They have not done so here.

However, Smith may not pursue her race discrimination claims under a Whistleblower Act theory. The Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1 *et seq.*, generally preempts state-law claims for civil rights violations (including the discrimination described here). *Elue v. City of Chicago*, No. 16 CV 09564, 2017 WL 2653082, at *4 (N.D. Ill. June 20, 2017) (citing *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 22–23 (Ill. 1997)). Smith failed to rebut this argument in her response and therefore waived the argument that her race discrimination claims in Count I are not preempted by the IHRA. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.")

Finally, Plascencia and Cesario contend that Smith has not made any allegations of wrongdoing against them in Count I. But that is incorrect: Smith alleges that Defendants, collectively, terminated her because of her complaints. (Second Am. Compl. ¶ 40.) Further, the Illinois Whistleblower Act defines "employer" to include "any person acting within the scope of his or her authority express or implied on behalf of [an employer] in dealing with its employees."

9

740 ILCS 174/5. This appears to encompass Cesario and Plascencia, at least for purposes of the pleadings. Thus, Defendants' motion to dismiss is denied as to Count I.

## II. Breach of Contract Against Plascencia and Cesario (Count II)

In Count II, Smith assets a claim for breach of contract. She alleges that she was party to "an enforceable employment contract for one year" and that Defendants breached that contract by terminating her before she completed her one-year term. (Second Am. Compl. ¶¶ 44–45.) Plascencia and Cesario contend that no claim for breach of contract can arise against them because they were not parties to the contract. The elements of a breach-of-contract claim are "offer, acceptance, consideration and failure to perform" *Smith v. Jones*, 497 N.E.2d 738, 740 (Ill. 1986). Smith did not specify who the parties to her employment contract but she does concede that Plascencia is not a contracting party and that the Board has exclusive power to hire and fire employee. She also has not objected to dismissal of the breach of contract claim as to Plascencia or Cesario. (Pl.'s Resp. at 8, Dkt. No. 23) Count II is therefore dismissed as to Plascencia and Cesario.[6]

## III. Breach of Implied Contract (Count III)

Defendants next challenge whether the Board's equal employment and anti-harassment policies create contractual rights enforceable by Smith. Smith alleges that Board policy 4001 "prohibit[s] retaliation against any employee who files a complaint for discrimination or against any employee who opposes illegal practices within the district" and that Board policy 4002 "prohibit[s] harassment of any employee based on the employee's membership in a protected class." (Second Am. Compl. ¶¶ 48–49.) She further alleges that these policies "create enforceable

---

[6] While Smith expressly concedes this point only as to Plascencia, Cesario adopted the same argument in his motion to dismiss and Smith does not argue that Cesario should remain named in this Count.

10

contract rights because the defendants intended that their employees, including plaintiff, would rely on [them]" and that she did, in fact, rely on them. (*Id.* ¶ 52.)

The Illinois Supreme Court has held that policy statements can "create[] enforceable contractual rights if the traditional requirements for contract formation are present." *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987). But the language used "must contain a promise clear enough that an employee would reasonably believe that an offer has been made." *Id.* Further, the "statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer . . . [and] the employee must accept the offer by commencing or continuing to work after learning of the policy statement." *Id.*

Smith has not produced or quoted from the policies that she claims provide the based for an implied contract. The Second Amended Complaint refers to the policies as Exhibits H and I, but they are not actually attached as exhibits. (At least not in the record before this Court.) Smith points to Exhibit C of the Second Amended Complaint, but Exhibit C only presents the District's Uniform Grievance Procedure, not Board policies 4001 or 4002. The Court notes that either party could have submitted the policies for the Court's review. *See O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020) (noting that courts may consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice" when reviewing motions to dismiss) (internal quotation marks omitted).

Without producing the actual policies for the Court's review, Smith's allegations fall short of stating a claim. She alleges that she relied on the policies, but mere reliance is not enough. Instead, the policies must contain a clear promise that could reasonably be interpreted as

constituting an offer, such that the typical contract elements of "offer and acceptance" are implicated. *Duldulao*, 505 N.E.2d at 318. Although the Court must make inferences in Smith's favor, she simply has not pleaded sufficient facts to support a plausible inference that the Board's policies contained the kind of specific promise necessary to form an implied contract. The best way for Smith to attempt to establish this would have been to attach the actual policies, which she has not done. But she also has failed to provide any specifics of what the policies obligated Defendants to do. A general statement that the Board prohibits retaliation and harassment, which is all Smith has alleged at this point, is not a sufficiently clear promise of action upon which an employee could reasonably rely.

Smith contends, in the alternative, that Count III states a claim under a promissory estoppel theory. The elements of such a claim are: "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523–24 (Ill. 2009). But here again, Smith has failed to state a claim because she has not pleaded that Defendants made her an unambiguous promise. For these reasons, Count III is dismissed.

## IV.    Declaratory Relief (Count IV)

Smith seeks declaratory relief in Count IV. Specifically, she alleges that the Board approved a 4% raise for certain employees for the 2019–20 fiscal school year and her position was eligible for that raise. (Second Am. Compl. ¶ 57–58.) However, Smith did not receive that raise after she was terminated from her position. (*Id.* ¶ 59.) Smith seeks a declaration that the raise applies to the unpaid salary and benefits she is owed. Defendants, however, contend that because

she was properly terminated from her position and is not owed any further payment, the raise is inapplicable to Smith.

Illinois law allows a plaintiff to demand a declaratory judgment even when alternative relief is available. 735 ILCS 5/2-701(a) ("No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments . . . .") However, the statute allowing for such relief "does not create substantive rights or duties, but merely affords a new, additional, and cumulative procedural method for the judicial determination of the parties' rights." *Beahringer v. Page*, 789 N.E.2d 1216, 1223–24 (Ill. 2003). "The essential requirements of a declaratory judgment action are: (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Id.* at 1223.

Smith has alleged that she had an interest in remaining employed and enforcing her employment contract. Defendants have an opposing interest and this case demonstrates their continuing controversy. Defendants' main argument is that Smith will fail on the merits, but because some of her state-law claims survive, Smith is entitled to pursue declaratory relief pursuant to 735 ILCS 5/2-701(a).

Defendants also argue that Count IV should be dismissed pursuant to the Illinois Tort Immunity Act, which generally protects state actors from claims for damages for actions they take in the course of their governmental duties. But the Tort Immunity Act does not prevent a plaintiff from obtaining declaratory relief against a government entity. *Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d 439, 444 (Ill. 2004). The Tort Immunity Act also does not affect the liability of governments or public employees based on contract, which is one of the main theories

13

under which Smith proceeds. 745 ILCS 10/2-101. Finally, although the statute provides immunity to public employees "for an injury resulting from [their] act[s] or omission[s] in determining policy when acting in the exercise of such discretion," 745 ILCS 10/2-201, the facts as alleged do not indicate that Smith's termination involved a policy decision. The Court thus declines to dismiss Count IV based on the Illinois Tort Immunity Act.

## V. Title VII Relief Against Plascencia and Cesario (Count V)

Pursuant to Title VII, it is "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a). Smith concedes that there is no individual supervisor liability for Title VII claims. *See Geier v. Medtronic, Inc.*, 99 F.3d 238, 244 (7th Cir. 1996) ("[A] supervisor, in his individual capacity, does not fall within Title VII's definition of employer."). Accordingly, Smith's Title VII claims against Plascencia and Cesario are dismissed.

## VI. Illinois Civil Rights Act (Count VI)

In Count VI, Smith asserts claims pursuant to the Illinois Civil Rights Act of 2003 ("ICRA"), 740 ILCS 23/1 *et seq.*, alleging that Defendants violated the statue's prohibition against racial discrimination by local governments. As an initial matter, Plascencia and Cesario are not properly named as defendants to this claim; the ICRA only provides for a cause of action against "unit[s] of State, county, or local government in Illinois." 740 ILCS 23/5(a); *see Thorncreek Apartments III, LLC v. Vill. of Park Forest*, 970 F. Supp. 2d 828, 845 (N.D. Ill. 2013). The Court therefore dismisses this claim against Plascencia and Cesario.

Defendants further contend that this claim is preempted by the IHRA, 775 ILCS 5/1 *et seq.*, and that the ICRA does not provide Smith with an independent cause of action. The ICRA

14

prohibits any "unit of State, county, or local government" from discriminating against any person based on their race, color, national origin, or gender, or from using "criteria or methods of administration" that have a discriminatory effect. 740 ILCS 23/5(a). It also creates a cause of action for a civil claim based on such discrimination. *Id.* 23/5(b). Defendants cite caselaw for the proposition that the IHRA grants "exclusive jurisdiction over claims of civil rights violations" to the Illinois Human Rights Commission. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006). But in fact the underlying statute only reserves jurisdiction over civil rights violations "[e]xcept as otherwise provided by law." 775 ILCS 5/8-111(D). Because the ICRA specifically provides that parties may file claims under that act in state or federal court, the IHRA does not preclude this claim. *See Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874, 890 & n.6 (N.D. Ill. 2015) (holding that the ICRA allows a plaintiff to "file a lawsuit directly in federal court," unlike the IHRA).

Defendants further contend that this Count should be dismissed because it is duplicative of Smith's Title VII claims for racial discrimination. Certainly, ICRA and Title VII are closely linked; claims under each are analyzed using the same elements. *See Hosick v. Chi. State Univ. Bd. of Trs.*, 924 F. Supp. 2d 956, 966 (N.D. Ill. 2013) ("When a non-discrimination statute, like the ICRA, says nothing about the burden of proof, courts look to Title VII case law for guidance." (citing *Frobose v. Am. Sav. & Loan Ass'n of Danville*, 152 F.3d 602, 616 (7th Cir. 1998))). But Defendants cite no authority establishing that ICRA claims must be dismissed where a plaintiff also pleads parallel federal antidiscrimination claims. Courts in this District have declined to dismiss potentially overlapping claims where, as here, "[i]t is too early to tell how the two counts will actually play out." *Nardoni v. Moke*, No. 02 CV 944, 2002 WL 1610988, at *4 (N.D. Ill. July 22, 2002). And in any event, Smith will not be allowed to recover twice for the same harm. *See*

15

*Duran v. Town of Cicero*, 653 F.3d 632, 639 (7th Cir. 2011) (noting that Illinois state law prohibits double recoveries). Thus, Defendants' motion to dismiss Count VI is granted as to Plascencia and Cesario but denied as to the District and the Board.

### VII.    Title IX (Count VII)

Smith contends that she was discriminated against because of her sex when she reapplied for the position of Director of Diverse Learners following her termination in that role. She alleges that Defendants demonstrated their personal bias against her by failing to remove a member of the hiring panel who Smith believed had a conflict of interest with her and by hiring a less-experienced, less-qualified man instead of her. (Second Am. Compl. ¶¶ 78–82.) She seeks damages pursuant to Title IX, 20 U.S.C. §1681 *et seq.*

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Here, Smith has not alleged discrimination pursuant to an education program or activity—she does not, for example, assert that she sought to participate in Defendants' programs in any way other than as an employee. Plaintiffs making Title IX claims are generally required to plead some connection to an educational program or benefit, which Smith has not. *See, e.g.*, *Mary M. v. N. Lawrence Cmty. Sch. Corp.*, 131 F.3d 1220, 1228 (7th Cir. 1997); *Kowal-Vern v. Loyola Univ. of Chi.*, No. 97C6409, 2002 WL 1880131, at *5 (N.D. Ill. Aug. 14, 2002), *aff'd*, 66 F. App'x 649 (7th Cir. 2003). Instead, Smith's employment discrimination claims are properly brought pursuant to Title VII. *See Lakoski v. James*, 66 F.3d 751, 755 (5th Cir. 1995) ("Congress intended Title VII to exclude a damage remedy under Title IX for individuals alleging employment discrimination"); *Kowal-Vern*, 2002 WL 1880131, at *5 ("[Plaintiff] cannot bring a private cause of action under

16

Title IX because the remedies she seeks are also afforded under Title VII."). Smith seeks to rely on *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366 (1979), but that case cuts against her position: the Supreme Court held that 42 U.S.C. § 1985(3) could not be invoked to redress what were actually violations of Title VII. *Id.* at 372, 377–378. Similarly, here, Smith cannot assert her Title VII claim through Title IX. Accordingly, Count VII is dismissed.

**VIII.   42 U.S.C. §§ 1981, 1983 Against Plascencia and Cesario (Counts VIII & IX)**

Smith contends that she was terminated from her position because African-American District employees and community members falsely complained to the Board and Plascencia that she was a racist. Count VIII alleges that Defendants thereby impaired Smith's rights to enforce her contract pursuant to 42 U.S.C. § 1981. Similarly, Count IX asserts that Defendants discriminated against Smith based on her sex and race and retaliated against her in contravention of several laws and the Board's policies, violating her constitutional rights pursuant to 42 U.S.C. § 1983. Defendants contend that these Counts should be dismissed against Cesario and Plascencia because Smith's complaint does not allege their personal involvement in the complained-of discrimination.

The pleading requirements of a discrimination claim under § 1981 are essentially the same as those for a Title VII claim. *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 403 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008). "That legal standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (discussing standard as applied at summary judgment stage). The same standard holds for § 1983 claims based on race discrimination: to state a claim, a plaintiff need only allege "that [her employer] fired [her] because of [her] race."

*Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019). However, Smith must also allege adequately that the individual defendants were personally involved in the discrimination of which she complains. *See Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) (discussing § 1983); *Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012) (discussing § 1981 and § 1983).

Smith's allegations, however, do not allow a plausible inference that Plascencia or Cesario were personally involved in discriminating against her. She alleges that Plascencia and Cesario knew that she had criticized and resisted the District's violations of special education law and other students' rights. (Second. Am. Compl. ¶ 12.) Smith further alleges that Plascencia received false complaints from African Americans that Smith was a racist (*id.* ¶ 85) and that Plascencia never defended Smith from these "false accusations of racism." (*Id.* ¶ 67.) Notably, she does not allege that Plascencia's failure to defend her was based on her race. As to Cesario, he allegedly informed Smith that she would be terminated from her position as Director of Diverse Learners as of July 19, 2019. (*Id.* ¶ 17.) In that meeting, Smith stated that she felt she had been retaliated against because she had filed a Title VII complaint and other complaints two days prior. (*Id.* ¶ 20.) Other than that, Smith's complaint offers no details regarding the role that Cesario played in her termination. And in her response brief, Smith does not point to any specific allegations that suggest Plascencia's or Cesario's personal involvement in the actions of which she complains. In sum, Smith's allegations fail to suggest that either Plascencia or Cesario made the decision not to renew her contract or the decision not to rehire her, or that either was involved in those decisions. For this reason, Counts VIII and IX are dismissed against Plascencia and Cesario.

### IX. Retaliatory Discharge (Count X)

Finally, in Count X, Smith brings a state law tort claim for retaliatory discharge based on her complaints about violations of students' rights, race discrimination, sex discrimination, and harassment. Defendants contend that this tort is not appropriately raised when a plaintiff has a cause of action under state or federal law for the same harm. Illinois courts recognize that the purpose of the retaliatory discharge tort is to provide a cause of action when the alleged violation lacks another remedy. *See Gutierrez v. City of Chicago*, 605 F. Supp. 973, 980 (N.D. Ill. 1985) ("[T]he doctrine of retaliatory discharge does not apply where a cause of action is available under federal or state civil rights laws to enforce the public policy allegedly contravened."); *Brudnicki v. General Elec. Co.*, 535 F. Supp. 84, 88-89 (N.D. Ill. 1982) (declining to recognize cause of action for retaliatory discharge where other statutory remedies were available).

Here, as pleaded in her complaint, Smith has available causes of action regarding the complained-of harms. While the Court has dismissed several of these claims, it has done so in large part due to Smith's failure to plead them adequately, not because they fail to encompass the kind of discrimination and retaliation of which Smith complains. Thus, Count X is dismissed.

19

## CONCLUSION

Defendants' partial motions to dismiss Plaintiff's Second Amended Complaint (Dkt. No. 16, 20) are granted in part and denied in part. The Court dismisses Counts III, VII, and X against all Defendants and dismisses Counts II, V, VI, VIII, and IX against Plascencia and Cesario. Counts I and IV, as well as the claims that were not the subject of the motions to dismiss, may stand as pleaded. Smith is granted leave to file an amended complaint that attempts to cure the deficiencies discussed above within 28 days.

ENTERED:

Dated: September 29, 2021

_____
Andrea R. Wood
United States District Judge

20